(174 App. Div. 10)

KENNEDY v. ROLFE.

(Supreme Court, Appellate Division, First Department. July 10, 1916.)

1. LITERARY PROPERTY &#x25C0;&#x2501;7—CONTRACTS—CONSTRUCTION—COMPENSATION—ROYALTIES.

A contract to write a vaudeville sketch acknowledged payment of a sum which was to be deducted from royalties to be paid for 70 weeks,

---

&#x25C0;&#x2501;For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

whereupon the sketch was to become the purchaser's sole property. *Held* not to require payment of the royalties unless the sketch was produced.

[Ed. Note.—For other cases, see Literary Property, Cent. Dig. § 6; Dec. Dig. ☞7.]

2. TRIAL ☞164—MOTION TO DISMISS.
The point that defendant was not liable for the royalties unless the sketch was produced was sufficiently raised by a motion to dismiss because no cause of action had been proven.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 372; Dec. Dig. ☞164.]

Appeal from Appellate Term, First Department.

Action by Frank Kennedy against Benjamin A. Rolfe. From a determination of the Appellate Term, affirming a judgment of the City Court for plaintiff, and denying defendant's motion for a new trial, defendant appeals. Reversed and rendered.

Argued before CLARKE, P. J., and McLAUGHLIN, SCOTT, DOWLING, and DAVIS, JJ.

Nathan Burkan, of New York City, for appellant.
Arthur F. Driscoll, of New York City, for respondent.

DAVIS, J. The plaintiff recovered a judgment in the City Court for $1,500, which on appeal to the Appellate Term was affirmed, and from that determination the defendant appeals to this court by permission.

The action is based on the following agreement between the plaintiff and defendant:

"Oct. 20th—12.

"The following is an agreement made between B. A. Rolfe and Frank Kennedy to write a musical comedy or sketch for Mr. Chas. A. Pusey (or whoever may take his place), and he is to be paid a royalty of twenty-five ($25.00) dollars per each playing week for a period of seventy (70) weeks, allowing three (3) weeks free from royalty, which time is for the breaking in of said act for vaudeville. After this time Frank Kennedy surrenders all rights and claims to the titles, lines, business, and situations, and same becomes the property of B. A. Rolfe.

"Upon a deposit of two hundred and fifty ($250.00) dollars advanced royalties, which is hereby acknowledged, Frank Kennedy authorizes B. A. Rolfe to deduct twelve dollars and fifty cents ($12.50) from first royalty week and every playing week thereafter until the sum of two hundred and fifty ($250.00) dollars shall have been deducted. Immediately following this the royalty of twenty-five ($25.00) dollars per each playing week shall be paid to Frank Kennedy.

"It is further agreed that Frank Kennedy is to stage above act and give sufficient time in rehearsing all lines and business to the best of his ability, and any scenes or parts of above sketch which may prove unsatisfactory shall be rewritten by Frank Kennedy according to B. A. Rolfe's wishes without extra charge. Frank Kennedy agrees to deliver complete book upon date mutually agreed."

The plaintiff alleges that he wrote and delivered the sketch according to the agreement and fully performed his part, but that the defendant failed to pay him $25 a week for royalties, excepting the sum of $250, and that he was damaged in the sum of $1,500. The answer of de-

fendant denies the allegations of the complaint, with the exception of the making of the contract and the payment of the sum of $250.

The plaintiff testified in substance that he had written and delivered the sketch as required by the contract; that the defendant expressed satisfaction with it, but suggested some changes; that the changes were made, and the sketch returned to the defendant; that from time to time he asked the defendant when he would produce the sketch; that defendant said it would be produced between the 1st and 20th of January, 1913; that thereafter the production was put off from time to time and the sketch has never been produced. The plaintiff claims that under the contract the defendant was bound to produce the sketch within a reasonable time, and that he has willfully refused to carry out that part of the contract, by reason of which the royalties have become due and payable.

The defendant contended that the plaintiff had never delivered to him a sketch that was satisfactory under the terms of the contract; that changes requested by the defendant were never made, and in substance that the sketch was unproducible; and that under the contract no royalties were to be paid unless the sketch was produced, and the defendant might or might not produce it, as he pleased.

Instead of construing this contract for itself, the court left it to the jury to determine what the contract meant, and the jury evidently found that the defendant had agreed to guarantee a 70 weeks' production and a consequent payment to plaintiff of $25 for each week, and that defendant had unreasonably and willfully broken his contract, and was therefore liable to pay as if the play had been produced. Thus the case was submitted to the jury upon the erroneous theory that the jury were to determine the meaning of the contract, leaving the jury at liberty to find that there was an absolute guaranty of the payment of royalties for 70 weeks.

[1] There is nothing in this contract to raise a doubt as to the meaning of the contract. It contains no provision requiring the defendant to produce it for a period of 70 weeks, or, indeed, for any length of time. It is simply an agreement on defendant's part to accept a sketch from the defendant, if satisfactory to him, and to pay $250 therefor, and in case he produced it at any time to pay royalties to the plaintiff at the rate of $25 each week of its production, not exceeding 70 weeks, the sketch thereafter to become the absolute property of the defendant.

[2] The point that the contract created no liability on the part of the defendant unless the sketch was produced was sufficiently raised by the defendant's motions to dismiss, which motions were specifically based upon the ground that the plaintiff had failed to prove a cause of action. These motions should have been granted, and the denial of them was error requiring the reversal of the determination of the Appellate Term and the judgment and order of the City Court.

The determination of the Appellate Term, and the judgment and order of the City Court, are reversed, and the complaint dismissed, with costs in all courts. Order filed. All concur.